Nott, J.,
delivered the opinion of the court:
This is a suit under the Abandoned or captured property Act. The defendants are trustees of a fund in the Treasury derived from certain realty in the city of Memphis. The beneficiary under the act is the person who has a “right of the proceeds ” (§ 3). The claimants are husband and wife, but the wife sets uj> a title to the proceeds, and the husband, vdio merely joins in the suit pursuant to a rule of the court, concedes that she is the person in whom is the right. Undoubtedly, one or the other of these claimants should recover, and undoubtedly a judgment against either claimant would bar him or her from hereafter setting up ?my claim upon the fund; but the defendants insist that the husband, who seeks nothing by the suit, is in fact the true beneficiary under the statute, and that the wife, wrho asserts a title from him, has no legal right to the fund.
The point upon which the legal question of the case turns is a *265 deed of conveyance made in 1862, whereby the husband conveyed directly to tbe wife, in her own right, the real property from which the fund in suit was subsequently derived. The property was then in the actual occupancy of tenants holding under previous leases from the husband, and there is no evidence (other than the presumption, arising' from the delivery of the deed) to show that the wife acquired actual possession before the seizure of the property by the military forces of the United States. Her right to recover rests, therefore, entirely upon her deed.
The courts of Tennessee early declared “the tohole body of the common lato on the subject of the domestic relations, and especially in the relation of baron and femme,” to be the primary law of that State (McCrary v. King, 3 Hump., 267), and no statute has been found whipli authorizes a direct conveyance from husband to wife. Considered as a question of law, we fully agree in the soundness of every position taken by the learned counsel for the defendants in his written argument $ such a deed would be void at the common law; there is no governing statute, and the unwritten law of the State has not been settled by such a series of adjudications as would bind the Federal courts.
But the courts of Tennessee, nevertheless, have gone to the utmost limit in upholding in equity conveyances made to the Avife. On the one hand, there is no statute authorizing her to hold a separate estate and to sue or be sued in regard to it as a feme sole; on the other hand, it may be taken as the unwritten law of the State that in equity she may take property, real or personal, with or without the intervention of a trustee, and directly from her husband as from a third person. We are satisfied, after an examination of the Tennessee decisions, that this is one of those anomalous instances in common-law jurisprudence where the success of the party depends upon the nature of the tribunal in which she happens to be; in other words, that the deed here would be held by the courts of Tennessee to be Aroid at law and valid in equity.
If the husband had come into court as the trustee at law of the wife, averring that the legal title to the property AAras in himself, but that she Avas in equity entitled to these proceeds, and had sought as such trustee to recover to her use, there would have been little doubt, we think, of his right to have judgment. If he had come into court seeking to recover to his *266 own use, ancl the defendants had set up this deed to defeat his claim, it is probable that ive should have held that he was not the person having a right to the fund within the meaning- of the-statute. If judgment, nevertheless, had been rendered in his favor, it is well-nigh certain that a court of equity in Tennessee would have interposed on the application of the wife and have enjoined him from disposing of the fund and compelled him to pay it over to her. The resulting questions are whether such circuity of action is absolutely necessary, and whether this court, in the disposition of this fund, cannot decree the fund to the person having the right?
It was the purpose of the Abandoned or captured property Act to bring- before the court the person entitled to the fund. The statute not only exacted of the claimant proof that he was the owner of the captured property, but also of his “right to the proceeds.” The General Amnesty Proclamation, 25th December, 1868, practically relieved most if not all claimants from making proof of loyalty, but the statute, nevertheless, must be interpreted as at the time when it was enacted. Thus interpreted, it is universally conceded that the intent was that this fund in the Treasury should not go to persons guilty of having given aid or comfort to the rebellion. It is equally clear that if a loyal person, having a legal but not an equitable title to the captured property, could have maintained a suit and recovered a judgment, but could then have been compelled by a court of equity in Tennessee to pay the money over to a disloyal person having the equitable title, the primary purpose of the statute, in declaring the Government a trustee for only loyal owners, would have been evaded.
Accordingly, it was held by this court in Stoddart’s Case (6 C Cls. R., 340) that where property belonging to a trust estate was captured, the trustees who brought suit for the proceeds need not make proof of their own loyalty, for their legal estate is but a device of the law to protect the rights of others, but must make proof as to the nature and interests of the trust estate and as to the loyalty of the beneficiaries entitled to the proceeds. This conclusion of the court was based upon the well-known rule that in equity it is the cestui que trust, and not the trustee, who is to be regarded as the owner.
It is truei that that decision was rendered before .the pardon and amnesty cases were decided by the Supreme Court, and *267 more especially before tlie ease of Carroll (7 C. Cls. R., 255), where it was held that “ the ownership to be proved is that which existed at the time of capture,” and that the loyalty to be proved is that of the administratrix, in whom the title then was, and not that of the decedent, who by his death had transmitted that title before capture. It is also true that the Supreme Court there alludes to the fact that an administrator claims only in a representative capacity, and refers to the abstract reasonableness of investigating the loyalty of the creditors and dis-tributees of such an estate, who, in-fact, will receive the proceeds, adding, however, that “such an investigation might be endless,” “ and could not have been contemplated by the legislature.” But in the more recent case of Villalonga (10 C. Cls. R., 22), where a factor in possession at the time of capture, with a lien for his advances, sought to recover the whole of the proceeds to the use of himself and his principal, the Supreme Ooiut followed the reasoning of this court in Stoddart’s Case, and said:
“Plainly, it was the intention of Congress, manifested in the statute, that no person should bo permitted to recover out of the Treasury any of tlie proceeds of sale of-the property captured or abandoned except those who had given no aid or comfort to the rebellion. But if a factor, who lias made advances, no matter how small, may recover tlie entire proceeds of a consignment made to him — not only what he has advanced, but the share of his principal — the intention of the law may be wholly defeated. He may have received consignments from persons most active in promoting the rebellion and he may have advanced only one dollar on each bale of cotton consigned. If, now, he can recover the entire net proceeds of the sale of such cotton paid into the Treasury, his consignors through him, using him as a cover, escape entirely from the operation of the provision of the statute that no one should have a standing in the Court of Claims who has given aid and comfort to the rebellion. A construction of the law which admits of such a consequence cannot be correct. The intention of Congress is not thus to be evaded.”
In other woi’ds, the Supreme Court, in Villalonga’s Case, regarded the person who was entitled to the fund, or to a portion of the fund, as a proper claimant under the statute, and treated it as immaterial that his title to the captured property was but an equitable title grounded on a factor’s lien for his advances, with possession of the goods for his security. The case was remanded to this court with instructions to ascertain the extent *268 of the factor’s interest in the proceeds and render judgment accordingly ¿ and it seems clear, from the opinion of the court, that the special property of the factor and the general property of the consignor constituted each person an owner in the thing captured within the true intent of the statute; the factor (having the higher equity) to the full extent of his interest in the fund and the consignor to the residue.
■ Analogous cases also lead to the conclusion that when a wife has a right t¡o property which she can assert in a court of equity, and, with the assistance of such a court, can maintain possession against all the world, she must be regarded, in an action at law where her title is collaterally brought in question, as the legal owner; and it is immaterial whether her title was legal or equitable, so long as it secured to her the jus Msponendi — the right to dispose of or enjoy the property. A single illustration will suffice:
A conveyance of certain slaves was made by a husband’ to his wife in the District of Columbia, where the common law then prevailed, for a consideration which would have been deemed meritorious by a court of equity. The wife gave to the slaves a deed of manumission, and then died. After her death the husband seized them, and they brought an action to establish their freedom. On the trial, the husband requested the court to instruct the jury that the direct conveyance of the slaves from husband to wife without the intervention of a trustee was void, and that the wife was incapable of contracting directly with her husband in regard to them. In substance, the request was that the court charge the jury that as the wife could not take the legal title direct from her husband, therefore she did not become the owner of the slaves j just as it is here contended that because the wife could not take the legal title direct from her husband, therefore she did not become the owner of the captured property. The case was reviewed by the Supreme Court upon a bill of exceptions, and there “ the inability of the wife to contract or to take any interest from her husband without the intervention of a trustee was argued upon the restraints imposed upon women by the common law during coverture.” But the Supreme Court refused (in its own language)11 to take so narrow a view of the case.” 11 Every feature of the agreement,” said the court, “ is an appeal to have it tested by those principles of equity which have been applied to maintain a separate in *269 terest in women acquired from tbeir husbands during coverture, ’whether the same were made by the intervention of trustees or not, when the transfer was fairly made upon a meritorious or valuable consideration.” And the court held that the transfer “ passed the property as fully to the wife as if the husband had conveyed it to a third person,”' and that “ in regard to that property” she whs “to be considered as a feme soleP (Wallingsford v. Allen, 10 Peters, 583.)
Between this case and the one "how before us no definite distinction can be drawn. The wife’s title was acquired when the common law prevailed; it was taken directly from the husband without the intervention of a trustee; the validity of her deed of manumission depended upon her being the owner of the slaves; her title to them was strictly an equitable one, and it was held sufficient to constitute her the owner as effectually as if she had been a feme sole. Therefore, upon both reason and authority, we feel warranted in holding that the technical rule of the common law should not defeat the equitable title of a feme covert in captoed property the proceeds whereof are in the Treasury; and that she who was entitled in equity to hold the property is entitled in this court to recover the fund derived from it, and must be deemed the “ owner ” within the true intent of the statute.
The judgment of the court is that the claimant, Elizabeth A. Meriwether, recover of the defendants the sum of $3,496.26, and that the petition of the claimant, Minor Meriwether, be dismissed.